**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JAMES CRABBE, | : | Case No. 1:19-cv-893 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| THE PROCTER & GAMBLE CO., *et al.*, | : | |
| Defendants. | : | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS (Doc. 9)**

This civil case is before the Court on Defendants The Procter & Gamble Company and The Procter & Gamble U.S. Business Services Company (collectively, "P&G")'s motion to dismiss Plaintiff James Crabbe's Complaint (Doc. 9), as well as the parties' responsive memoranda. (Docs. 11, 12).[1]

## I.  FACTUAL BACKGROUND

For the purposes of this motion to dismiss, the Court must: (1) view the complaint in light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff James Crabbe began working for P&G UK in April 1984. (Doc. 1 at ¶ 8). Around the end of 2007, P&G offered Mr. Crabbe the opportunity to localize to the

---

[1] Plaintiff first filed his response in opposition on February 19, 2020 (Doc. 10), and an amended response on February 20, 2020. (Doc. 11). The Court will consider Plaintiff's amended response given it was filed by the original deadline for Plaintiff's response, P&G filed their reply in support fourteen days after the amendment, and P&G responded to the amendment.

1

United States. (*Id*. at ¶ 9). Before localizing in 2008, Mr. Crabbe consulted with a P&G international pensions representative, Mauricio Chavarria, to consider any impacts on his retirement income if he moved to the United States. (*Id*. at ¶ 10). Mr. Crabbe exchanged multiple emails with Mr. Chavarria on how his retirement income would be calculated if he localized. (*Id*. at ¶¶ 15-16). Mr. Crabbe also reviewed P&G's Administrative Regulations Retirement Income Policy (the "1992 Policy"). (*Id*. at ¶ 11).

The 1992 Policy counteracted any loss in retirement benefits when P&G employees localized to the US from another county. (*Id*. at ¶ 12). The 1992 Policy worked by providing an International Retirement Arrangement (the "IRA") Supplement (the "Supplement") if an employee's retirement income were less than an IRA Target (the "Target") set by P&G. (*Id*.). Under the 1992 Policy, P&G calculated an IRA Offset (the "Offset") by taking into account the actual amount an employee received from the P&G pension plan in his/her home county and the actual amount of the home country's state pension plan, if any. (*Id*. at ¶ 13). If the Offset exceeded the Target, no Supplement was provided. (*Id*. at ¶ 16).

Based on the 1992 Policy and communications with Mr. Chavarria, Mr. Crabbe decided to localize to the United States. (*Id*. at ¶ 17). Ten years passed, during which, in 2009 and 2010, Mr. Crabbe attended meetings and received documents showing no changes to the calculation of his retirement under the 1992 Policy. (*Id*. at ¶ 18).

On February 12, 2018, Mr. Crabbe began planning for retirement, emailing the P&G Global Pension Administration (the "Administration") and asking for an estimate of his retirement benefits. (*Id*. at ¶ 22). On April 9, 2018, the Administration replied,

2

calculating Mr. Crabbe's estimated retirement income based on P&G's IRA Plan (the "2016 Plan"). (*Id*. at ¶ 23).

Under the 2016 Plan, and like the 1992 Policy, P&G calculated the Offset by taking into account amounts received from the P&G pension plan in his/her home county and the home country's state pension plan, if any. (*Id*. at ¶ 24). However, unlike the 1992 Policy which used actual amounts, P&G calculated any Offset under the 2016 Plan by using the net present value of the lump sum of the benefits and converting those sums to USD. (*Id*.).

Under the 2016 Plan, Mr. Crabbe's Offset exceeded his Target, and the Administration concluded he was not entitled to a Supplement. (*Id*. at ¶ 25). On May 30, 2018, Mr. Crabbe replied to the Administration, disputing the estimate based on the 1992 Policy, but also raising three errors with the Administration's calculation under the 2016 Plan – the exchange rate, Mr. Crabbe's years worked with P&G UK, and the amount for his UK state pension. (*Id*. at ¶¶ 28-30). On June 29, 2018, the Administration replied, rejecting all of Mr. Crabbe's points. (*Id*. at ¶ 31). On July 2, 2018, Mr. Crabbe provided data on his UK state pension and proof of years worked with P&G UK. (*Id*. at ¶ 32).

With this new data, the Administration still concluded that Mr. Crabbe was not entitled to a Supplement under the 2016 Plan. (*Id*. at ¶ 33). On July 11, 2018, Mr. Crabbe replied to the Administration, providing a correct exchange rate. (*Id*. at ¶ 34). On July 12, 2018, the Administration replied that, even with the revised exchange rate, Mr. Crabbe was not entitled to a Supplement. (*Id*. at ¶ 35). Accordingly, under the 2016 Plan, Mr. Crabbe's claim for benefits was denied. (*Id*. at ¶ 36).

3

On August 21, 2018, Mr. Crabbe appealed the Administration's finding to the IRA Committee (the "Committee"), which consisted of three P&G employees appointed by a P&G Vice President. (*Id*. at ¶¶ 37-38). On October 25, 2018, the Committee denied Mr. Crabbe's appeal, noting that the 1992 Policy was a previous version updated by the 2016 Plan, thus the 2016 Plan controlled the decision. (*Id*. at ¶¶ 40-42).

Mr. Crabbe never received an amended version or summary description of modifications made from the 1992 Policy to the 2016 Plan between localizing in 2008 to 2018. (*Id*. at ¶ 42). Mr. Crabbe never received notice that the 1992 Policy would no longer be in effect. (*Id*. at ¶ 43). The April 9, 2018 email estimating his retirement income was the first time he learned of the 2016 Plan or different calculation of his retirement income. (*Id*. at ¶ 27). Mr. Crabbe did not receive a copy of the 2016 Plan until January 11, 2019, when Mr. Crabbe requested documents from the Committee related to the 1992 Policy and 2016 Plan. (*Id*. at ¶¶ 44-45).

On December 31, 2018, Mr. Crabbe retired from P&G, receiving no Supplement. (*Id*. at 46). On October 22, 2019, Mr. Crabbe filed suit against P&G, asserting one claim for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id*.). In response, P&G moved to dismiss Mr. Crabbe's claim (Doc. 9).

## II. STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P.

4

8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (*citing* Fed. Rule Civ. P. 8(a)(2)).

5

## IV. ANALYSIS

Mr. Crabbe's sole claim alleges that P&G breached its fiduciary duty pursuant to ERISA § 502(a)(3), which permits civil actions by participants, beneficiaries, or fiduciaries:

> (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan

29 U.S.C. § 1132(a)(3). Mr. Crabbe's claim is based on P&G's failure to disclose a summary of material modifications when the 2016 Plan was implemented as required by ERISA §§ 102, 104(b), 29 U.S.C. §§ 1022, 1024(b). Mr. Crabbe asks that "he be awarded all appropriate, make-whole equitable relief to redress Defendants' breaches of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to equitable estoppel, reformation, and/or surcharge representing the monetary benefits he would have received under P&Gs former Policy as represented to him." (*Id.* at ¶ 59, Prayer for Relief).

P&G argues that Mr. Crabbe's claim should be dismissed for failure to state claim. (Doc. 9). P&G argues that Mr. Crabbe's complaint is an artfully pled denial of benefits claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and under which he cannot recover. P&G also argues Mr. Crabbe fails to state a claim for equitable relief.

The Court disagrees.

1.      **Substantive Relief**

As an initial matter, this Court addresses P&G's argument that, under ERISA, Mr. Crabbe cannot recover substantive relief for a procedural violation, such as failure to disclose. "ERISA requires a plan administrator to furnish summary plan descriptions to employees [and] to all participants and beneficiaries of an ERISA plan." *Briggs v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 774 F. App'x 942, 949 (6th Cir. 2019) (citing 29 U.S.C. § 1024(b)). "But, as [the Sixth Circuit] ha[s] consistently held, such shortcomings are not a basis for a **substantive** remedy, *i.e.*, an award of benefits." *Id*. (citing cases) (emphasis added). "Instead, recourse for disclosure violations is limited to the statutory penalties found in ERISA's civil enforcement provision." *Id*. (citing 29 U.S.C. § 1132(c); then citing cases).

P&G argues that Mr. Crabbe has repackaged a denial of benefits claim as a breach of fiduciary duty claim, he is only seeking a substantive remedy, and, accordingly, recourse is limited to statutory penalties. This Court agrees that a denial of benefits claim cannot be repackaged as breach of fiduciary duty claim. *See, e.g., Dye v. Formica Corp. Emp. Ret. Plan*, No. 1:18-CV-155, 2019 WL 859224, at *6 (S.D. Ohio Feb. 22, 2019) (emphasis deleted) (citing cases). The Court also acknowledges that, in order to bring a breach of fiduciary duty claim, the plaintiff must allege an injury separate and distinct

from a denial of benefits. *Id.* at *13.[2]

An injury caused by P&G's failure to disclose modifications from the 1992 Policy to the 2016 Plan is separate and distinct from a claim Mr. Crabbe could bring for denial of benefits under the 2016 Plan. As Mr. Crabbe alleges, he does not seek a substantive remedy, an award of benefits – he recognizes that under the 2016 Plan, he cannot recover. (Doc. 11 at 11-12). Instead, he seeks equitable relief, including estoppel, reformation, and surcharge because P&G failed to disclose material modifications to the 1992 Policy that caused actual harm to his retirement income. As the Supreme Court has recognized, this equitable relief may be appropriate when a fiduciary fails to accurately disclose plan information. *See, e.g., CIGNA Corp. v. Amara*, 563 U.S. 421, 438–42 (2011).

Accordingly, the Court disagrees with P&G's argument that Mr. Crabbe fails to state a claim for equitable relief because of alleged "repackaging" of a substantive claim. The Court will now turn to P&G's arguments that Mr. Crabbe's claim fails to state a claim for appropriate equitable relief.

### 2. Equitable Relief

P&G argues that Mr. Crabbe fails to state a claim for "appropriate equitable relief" because Mr. Crabbe is ultimately seeking money damages in the form of unpaid benefits. (Doc. 9 at 9). Mr. Crabbe responds that these forms of relief are appropriate under the

---

[2] P&G cites at length the Sixth Circuit's decision in *Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1007 (6th Cir. 1993). This case is distinguishable. The *Lewandowski* court only discussed <u>substantive</u> remedies under ERISA, not <u>equitable</u> remedies for a company's failure to comply with notice and disclosure provisions. Further, the Sixth Circuit has "left open" how equitable claims may interact with the "repackaging" defense P&G asserts here. *See Briggs*, 774 F. App'x at 951.

8

Supreme Court's decision in *Amara*, 563 U.S. at 426.  (*See generally* Doc. 11).  P&G replies that the facts of *Amara* are distinguishable, and the case does not apply here.  (Doc. 12 at 3-4).  Alternatively, P&G contends that his claim fails because he has not alleged a material misrepresentation made by P&G.  (Doc. 12 at 8-11).

The Court agrees that the facts of *Amara* are somewhat distinguishable; however, this Court finds that *Amara* supports a finding that Mr. Crabbe has stated a claim for relief.

### i. The *Amara* Decision

*Amara* concerned CIGNA's disclosure violations under ERISA §§ 102, 104(b) – the same at issue in this case.  In November 1997, CIGNA provided notice to its employees that it would be replacing its pension plan and the new plan would "significantly enhance its retirement program."  *Id*. at 426-28.  In October 1998, CIGNA provided details of changes to the plan, retroactive to January 1998, and made promises to protect the amounts employees had earned prior to 1998 in order to provide the greatest amount of retirement benefits.  *Id*. at 427-29.  However, in reality, the new plan "made a significant number of employees worse off."  *Id*. at 429.  CIGNA also did not provide the promised benefits of preserving retirement income already earned.  *Id*.

The District Court found that CIGNA "intentionally misled its employees" and that the beneficiaries were entitled to relief under § 502(a)(1)(B).  *Id*. at 431.  However, the District Court did not award benefits, but reformed the terms of the new plan based on the promises made by CIGNA.  *Id*. at 433.  The District Court also ordered CIGNA to

9

pay out appropriate benefits based on the reformed terms to employees that had retired. *Id*. The Second Circuit affirmed. *Id*. at 435.

Upon appeal, as an initial matter, the Supreme Court concluded that the District Court did not have authority to reform the terms of the plan under § 502(a)(1)(B). *Id*. at 438. However, it concluded that such equitable forms of relief were appropriate under § 502(a)(3). *Id*. at 442. When considering "appropriate equitable relief" under § 502(a)(3), the Supreme Court looked at traditional powers of equity courts: (1) reforming contracts to prevent fraud, (2) estopping a party and putting the injured person "in the same position he would have been in had the [estopped party's] representations been true," and (3) awarding surcharge, a form of "monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id*. at 441-42.

The Supreme Court also noted that, when considering "appropriate equitable relief," "any requirement of harm must come from the law of equity." *Id*. at 443. Thus, the plaintiff need not always prove a detrimental reliance on a representation or an act of fraud. *Id*. at 443-444; *see also Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 348 (6th Cir. 2018) (citing *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 193 (1963) ("Fraud ... in the sense of a court of equity properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.").

For example, equity courts traditionally required "a showing akin to detrimental reliance" based on a defendant's statement to prove equitable estoppel. *Amara*, 563 U.S. at 443. However, reformation required only "fraudulent suppressions, omissions, or insertions materially affecting the substance of a contract." *Id*. (quotation omitted). Similarly, surcharge was "mold[ed] relief to protect the rights of the beneficiary according to the situation involved." *Id*. at 444 (quotation omitted).

Thus, the Supreme Court vacated and remanded for the District Court to consider its awarded relief in terms of equity. However, the Supreme Court also concluded: "In the present case, it is not difficult to imagine how the failure to provide proper summary information, in violation of the statute, injured employees [because] plan changes would likely prove harmful. We doubt that Congress would have wanted to bar those employees from relief." *Id*.

### ii. Applying *Amara*

Taking Mr. Crabbe's well-pled allegations as true, he has stated a claim for appropriate equitable relief under § 502(a)(3). Although the Court agrees with P&G that the Mr. Crabbe does not allege P&G made *intentional* misrepresentations like the District Court found in *Amara* – this is not necessarily a requirement for Mr. Crabbe to prove his claim, let alone to state a plausible claim for relief.

Like *Amara*, Mr. Crabbe is seeking relief from P&G's violations of §§ 102(a) and 104(b) for failing to accurately disclose modifications to his beneficiary plan. He alleges that he relied on P&G employee statements that the 1992 Policy would govern the calculation of his retirement benefits, which is why he decided to localize to the United

States and remain in the United States through his retirement. Mr. Crabbe asserts that he was never provided the 2016 Plan or summary of that plan. Mr. Crabbe contends that he suffered actual harm from the plan changes because his retirement income was adversely affected and/or he could have taken steps to protect his income had he known of the plan changes. Mr. Crabbe alleges this harm was caused by P&G's failure to provide a summary plan. As the Court concluded in *Amara*, it is not difficult to imagine how P&G's failure to disclose proper summary information, let alone any information or notice of material modifications as alleged in the complaint, could injure Mr. Crabbe.

Accordingly, at this stage of the litigation, and based on the well-pled allegations presented in Mr. Crabbe's complaint, the Court declines to dismiss Mr. Crabbe's complaint for failure to state a claim.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 9) is **DENIED**.

**IT IS SO ORDERED.**

Date:  January 4, 2021                                        *s/ Timothy S. Black*
                                                              Timothy S. Black
                                                              United States District Judge